# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| TIMOTHY M. GROSSER, | : | CIVIL NO: 3:CV-09-2416 |
| --- | --- | --- |
| Plaintiff, | : | |
| | : | (Judge Nealon) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| MICHAEL J. ASTRUE, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

I. **Statement of Facts and of the Case**

A. **Introduction**

The Plaintiff, Timothy Grosser, appeals from an adverse social security disability decision which denied his claim for supplemental security income benefits. This adverse finding was made by the ALJ on a factual record in which one treating physician flatly stated that Grosser should not work, and Grosser's disability claim was supported in part by a state agency determination that the claimant could only perform only sedentary work. Yet despite these conclusions and opinions, which were based upon thoroughly documented claims of severe, chronic and disabling back pain, the ALJ denied this claim, ruling without any detailed analysis that Grosser had failed to meet his threshold requirement of showing that his chronic back ailments constituted a severe impairment. Because we conclude that the ALJ's findings are not

1

adequately explained or supported on the record of these proceedings, we recommend that the ALJ's decision be reversed and that this matter be remanded for further proceedings.

### B. Grosser's Medical and Employment History

In this case the evidence developed in these disability proceedings reveals that the Plaintiff, Timothy Grosser, was born on April 9, 1967 and was thirty-eight (38) years old on the alleged disability onset date. (TR. 18). Grosser is, therefore, considered a "younger person" under the Regulations. 20 C.F.R. §§ 404.1563(c) and 416.963(c). While Grosser is able to communicate in English, he has a limited education, as he completed 11 years of schooling but did not graduate from high school. (Doc. 13). Grosser's reading and comprehension skills are poor. (TR. 34). Grosser is divorced and lives alone. (TR. 24). His mother assists him in performing everyday tasks, such as caring for his home, going to the store, preparing his meals, doing yard work and taking the trash out. (TR. 195). Indeed, Grosser testified that he cannot do dishes because standing in that position causes him unbearable pain. (TR. 47).

Grosser held a series of labor-intensive jobs until the onset of his disability in 2006. Thus, from 1992 through 1994, Grosser worked at a tire recycling plant. (TR. 186). From 1994 through 1995, Grosser worked as a glass washer and lifted panes of glass. (TR. 186; 71-72). Grosser then held a position as a drywall installer, lifting sheets of wallboard from 1997 to 1998. (TR. 186; 69-70). He delivered newspapers from 1997 through 2000. (TR. 186). Finally, from March 15, 2000, through January 24, 2006, Grosser worked as a truck driver for Hegins Valley Lines. (TR. 204-205). Grosser stated that by 2006 his back pain became incapacitating to the degree that he

could no longer perform the required duties of his position as a truck driver for Hegins Valley Lines. (Doc. 13 at 2).

Grosser sought treatment from Robert A. Ettlinger, M.D., his principal physician, as well as from a neurologist, several orthopedic specialists, physical therapists, pain management specialists and other health care providers. In an effort to alleviate his symptoms, Grosser participated in physical therapy and was prescribed various medications. Grosser also underwent several epidural injections which he alleged provided limited benefits. It is undisputed that these treatments provided little relief for Grosser.

In addition, testing was conducted on numerous occasions to try to determine the root cause of this pain. For example, in March of 2006, Albert Heck. M.D., performed a neurological examination of the Plaintiff and concluded that Grosser did not suffer from a neurological compromise. (TR. 275-276). G. Timothy Reiter, M.D., then evaluated the Plaintiff in July of 2006 and found that, while Grosser was suffering from "significant back pain," there were no indications from the Plaintiff's 2005 MRI study which could explain this pain. (TR. 331). He also stated that surgery would not be useful for the Plaintiff. (TR. 331).

In August of 2006, Steven Morganstein, D.O. examined Grosser. (TR. 372). At that time, Dr. Morgenstein found that Grosser had tenderness in his lower back and a limited range of motion. (TR. 374). Grosser underwent yet another MRI test in June of 2006. On this occasion, the radiologist found that as compared to the November 2005 MRI, the June 2006 MRI showed low grade degenerate disc disease findings observed in the lower lumbar spine most prominently seen at L4-5 and L5-S1. (TR. 325). The radiologist stated that the degree of degenerative disc disease was similar to what was previously seen. (TR. 325). Dr. Morganstein stated that the Plaintiff's November 2005 and June 2006 MRI studies showed small disc protrusion at L4-5 with degenerative changes at L4-5 and L5-SI, with no significant nerve root

3

compromise. (TR. 374). Dr. Morganstein directed the Plaintiff to receive an epidural injection and explained that the Plaintiff needed a program to help the muscular component of his symptoms. (TR. 372-375).

When the Plaintiff was examined again by Dr. Morganstein in September of 2006, he stated that the epidural injection provided little relief. (TR. 370). Thus, Dr. Morganstein referred Grosser for a discogram to try to further examine and identify the source of his pain. A discogram is a diagnostic test in which needles are inserted in to the discs of the vertebrae and contrast dye is injected. (Doc. 13 at 3, fn. 1). An x-ray or CT scan is then performed to see if the dye spreads, which would indicate that a disc is damaged. (Doc. 13 at 3, fn. 1).

Dr. Morganstein reported that the discogram, performed by Dr. Norman Haueisen, showed significant abnormalities with internal disc disruption at the L3-4, L4-5, and L5-S1 levels. (TR. 363, 366-67). Dr. Morganstein then recommended that the Plaintiff wear a pneumatic vest and attend aquatic therapy. When the Plaintiff asked Dr. Morganstein when he would be able to return to work, Dr. Morganstein flatly stated that the Plaintiff could not perform any type of gainful employment. (TR. 364-363).

In July of 2007, the Plaintiff was again examined by Dr. Morganstein, who recommended that the Plaintiff continue taking Oxycontin for pain. (TR. 436). He also prescribed Flexeril and recommended that the Plaintiff be fitted with a lumbar brace and remain as active as possible. (TR. 436).

The findings of Dr. Morganstein, which documented the severity of Grosser's back pain, and provided clinical support for the severity of this pain in the form of a discogram which showed significant abnormalities with internal disc disruption at the L3-4, L4-5, and L5-S1 levels (TR. 363, 366-67), were also confirmed, in part, in the state agency determination that Grosser could only perform sedentary work. Furthermore, these clinical findings and state agency determinations were

corroborated by statements from Grosser's cousin, Carol Bayer, who stated that Grosser had trouble walking, could not sit for extended periods, and appeared to be in constant chronic pain. (TR. 62.)

### C. Procedural History

Grosser filed an initial application for disability insurance benefits ("DIB") on May 17, 2006, alleging disability since January of 2006 due to degenerative disc disease. (TR. 92). This application was initially denied by the agency on August 24, 2006. (TR. 92-97). The Plaintiff filed a written request for a hearing on October 20, 2006. (TR. 98). On January 16, 2008, a hearing was held and the Plaintiff appeared and testified before an ALJ in Harrisburg, Pennsylvania. (TR. 20-91). Vocational expert Paul A. Anderson also appeared at the hearing. (TR. 47). The ALJ also received clinical evidence, including the evidence of Dr. Morganstein, as well as evidence from Grosser's relative, Carol Bayer, regarding the severity of his back symptoms.

On January 29, 2008, the ALJ issued an order denying benefits to the Plaintiff. (TR. 10-19). This order concluded that Grosser's reported, and documented, chronic back pain did not even rise to the threshold level of a severe impairment under step two of the five step sequential disability assessment process mandated by social security regulations. (Id.) In reaching this conclusion, the ALJ summarily dismissed the conclusions of Dr. Morganstein stating without further discussion that those conclusions were not supported by "objective findings." The ALJ did not, however, address the objective findings that, in fact, supported Dr. Morganstein's conclusions, and specifically did not analyze the discogram, performed by Dr. Norman Haueisen, which showed significant abnormalities with internal disc disruption at the L3-4, L4-5, and L5-S1 levels. (TR. 363, 366-67.) Furthermore, in reaching her conclusion. The ALJ also summarily discounted the state agency finding of medical limitations for Grosser, stating that this finding was not supported by the imaging test results.

However, once again, this ALJ determination did not address or analyze the discogram, performed by Dr. Norman Haueisen, which showed significant abnormalities with internal disc disruption at the L3-4, L4-5, and L5-S1 levels. (TR. 363, 366-67.) Finally, in reaching this finding, the ALJ discounted Grosser's claims of chronic pain despite the fact that those claims were supported by Dr. Morganstein's conclusions, were confirmed by clinical findings including the discogram of the plaintiff, and were corroborated by a witness, Carol Bayer. In rejecting Grosser's claims of severe pain, the ALJ simply found them to be "not entirely credible" without providing any explanation of why they lacked credibility in light of the independent confirming proof of those complaints of pain presented at the hearing.

On April 3, 2008, the Plaintiff appealed the ALJ's decision to the Appeals Council. (TR. 7-9). On August 20, 2008, the Appeals Council denied the Plaintiff's appeal. (TR. 2-6). The Plaintiff requested an extension of time to seek a federal appeal and initiated the instant civil action in this court on December 9, 2009. (Doc. 1). The parties have fully briefed this matter, (Docs. 13 and 16), and this case is now ripe for resolution. For the reasons set forth below, we find that the ALJ findings in this case; that those findings are adequately explained on the record; and that the findings reflect an appropriate assessment of all of the medical evidence, including the treating physician's reports. Therefore, it is recommended that this appeal be denied.

## II. Discussion

### A. Standards of Review–The Roles of the Administrative Law Judge and This Court

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the administrative law judge (ALJ) and this court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive disability benefits, a claimant must present evidence

which demonstrates that the claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits. See 20 C.F.R. § 404.1520. See also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). If the ALJ finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. § 404.1520.

As part of this analysis the ALJ must sequentially determine, first, whether the claimant is engaged in substantial gainful activity. If a claimant is not engaged in gainful activity, the ALJ must then determine at step two whether the claimant has a severe impairment. If a claimant fails to show that his impairments are "severe," he is ineligible for disability benefits. See Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). The Regulations provide that a "severe" impairment is an "impairment or combination of impairments which significantly limits your physical or mental ability

7

to do basic work activities." 20 C.F.R. §404.1520. With respect to this threshold showing of a severe impairment, the showing required by law has been aptly described in the following terms: "In order to meet the step two severity test, an impairment need only cause a slight abnormality that has no more than a minimal effect on the ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921; S.S.R. 96-3p, 85-28. The Third Circuit Court of Appeals has held that the step two severity inquiry is a *'de minimus* screening device to dispose of groundless claims.' McCrea v. Comm. of Soc. Sec., 370 F.3d 357, 360 (3d Cir.2004); Newell v. Comm. of Soc. Sec., 347 F.3d 541, 546 (3d Cir.2003). 'Any doubt as to whether this showing has been made is to be resolved in favor of the applicant.' Id." Velazquez v. Astrue, No. 07-5343, 2008 WL 4589831, *2 (E.D. Pa. Oct. 15 2008).

Accordingly, "[d]ue to this limited function, the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." McCrea v. Commissioner of Social Sec., 370 F.3d 357, 360 (3d Cir. 2004). Once this threshold, *de minimus* showing is made, the ALJ must consider the following three factors: (1) whether the claimant's impairment meets or equals a listed impairment; (2) whether the claimant's impairment prevents the claimant from doing past relevant work; and (3) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. § 404.1520. This disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he is unable to engage in past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

Moreover, where a disability determination turns on an assessment of the extent of a claimant's pain, the Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. Such

8

cases require the ALJ to "evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work." Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999). Cases involving an assessment of subjective reports of pain "obviously require[ ]" the ALJ "to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Id.

In making this assessment, the ALJ is guided both by statute and by regulations. This guidance eschews wholly subjective assessments of a claimant's pain. Instead. at the outset, by statute the ALJ is admonished that an "individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all the evidence. . . , would lead to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A).

Applying this statutory guidance, the Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. Under these regulations, first, symptoms, such as pain, shortness of breath, and fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b). Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. § 404.1529(b). In so doing, the medical evidence of record is considered along with the claimant's statements. 20 C.F.R. § 404.1529(b). Social

9

Security Ruling 96-7p gives the following instructions in evaluating the credibility of the claimant's statements regarding her symptoms: "In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p. SSR 96-4p provides that "Once the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the pain or other symptoms alleged has been established on the basis of medical signs and laboratory findings, allegations about the intensity and persistence of the symptoms must be considered with the objective medical abnormalities, and all other evidence in the case record, in evaluating the functionally limiting effects of the impairment(s)." SSR 96-4p.

The ALJ's disability determination must also meet certain basic procedural and substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

Once the ALJ has made a disability determination, it is then the responsibility of this Court to independently review that finding. In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying Plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). When reviewing the denial of disability benefits, we must simply determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)." Johnson, 529 F.3d at 200. See also Pierce v. Underwood, 487 U.S. 552 (1988). It is less than a preponderance of the evidence but more than a mere scintilla of proof. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)(quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial

evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966). Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir.1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." Frazier v. Apfel, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

### B. The ALJ's Decision Does Not Adequately Address the Medical Evidence and, Therefore, Must Be Remanded for Further Consideration

As we have noted, an ALJ's decision must must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. Thus, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir 1999). In this case we find that the ALJ's decision has not provided a sufficient, and sufficiently complete, statement of the ALJ's analysis of the evidence, and has not adequately explained which proof was found persuasive, and which evidence was discounted.

In particular, we conclude that this analysis is inadequate in the following significant respects:

First, in the instant matter, at step two of the disability evaluation process, the ALJ found that the Plaintiff's only severe impairment was narcotics dependence, and specifically rejected Grosser's back pain as a severe impairment. (TR. 15). However, in reaching this conclusion the ALJ failed to provide a detailed explanation for rejecting the opinion of the Plaintiff's treating physician, Dr. Morganstein, or the results of the discogram test of Grosser, which showed significant abnormalities with internal disc disruption at the L3-4, L4-5, and L5-S1 levels (TR. 363, 366-67). Further, the ALJ failed to specify what evidence, if any, was contradictory to this medical evidence of record. The ALJ merely, and in our view erroneously, stated that limited weight was given to Dr. Morganstein's opinion because it was unsupported by the objective findings and that Dr. Morganstein failed to provide specific limitations. (TR. 17). Before rejecting the Dr. Morganstein's opinion, which was supported by clinical testing results, the ALJ should have either pointed to contradictory medical evidence or provided "a clear and satisfactory explication of' the reasons for rejecting that opinion, Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981), and explanation which would have explained how the medical evidence did not support the opinions of Dr. Morganstein. See Kurilla v. Barnhart, No. 04-1724, 2005 WL 2704887,*5 (E.D. Pa. Oct. 18, 2005)(remanding case where ALJ provided inadequate explanation of reason for rejecting opinion).

This principle applies with particular force in a case such as this, where the cursory analysis of a doctor's opinion is cited to support an adverse ruling as step 2 of the five step disability evaluation process. As we have noted , "[t]he Third Circuit Court of Appeals has held that the step two severity inquiry is a *'de minimus* screening device to dispose of groundless claims.' McCrea v. Comm. of Soc. Sec., 370 F.3d 357, 360 (3d Cir.2004); Newell v. Comm. of Soc. Sec., 347 F.3d 541, 546 (3d Cir.2003). 'Any doubt as to whether this showing has been made is to be resolved in favor of the applicant.' Id." Velazquez v. Astrue, No. 07-5343, 2008 WL 4589831, *2 (E.D. Pa. Oct. 15

2008).Therefore, "[d]ue to this limited function, the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." McCrea v. Commissioner of Social Sec., 370 F.3d 357, 360 (3d Cir. 2004). When we conduct this close scrutiny of the ALJ's step two analysis, we find that it is lacking in sufficient detail and clarity and fails to address probity proof which supports a contrary conclusion. Accordingly, this case should be remanded for further consideration of this issue.

Moreover, the ALJ seemed to misunderstand the significance of the general consensus of the Plaintiff's physicians that Grosser was not a candidate for surgery. The ALJ cited this finding in support of her conclusion that Grosser did not suffer from a significant impairment, stating that the Plaintiff "has been to 5 surgeons who have not recommended surgical procedure. Surgery is not warranted based on the objective findings." (TR. 17) However, the ALJ appears to have failed to fully consider the fact that at least some of the evidence actually seems to support a contrary finding– that surgery was not warranted because Grosser was suffering from a severe impairment and surgery would not provide him any relief.

Further, the ALJ assigned limited weight to the state agency's opinion that the Plaintiff is able to perform sedentary work, reasoning that this opinion was not supported by the imaging. However, the ALJ failed to specify which imaging did not support this opinion, and made no mention of Grosser's discogram results which seemed to support the disability finding. (TR. 17).

Finally, even though the ALJ did not find that the Plaintiff suffered from a severe back impairment at step two of its analysis, the ALJ still proceeded to discuss his limitations resulting from his back impairments. In this regard the ALJ evaluated Grosser's credibility and found that the Plaintiff's testimony as to the severity of his limitations was not entirely credible. However, in reaching this conclusion the ALJ's opinion failed to clearly explain the reasons for finding that the Plaintiff did not suffer

from a severe back impairment. Moreover, the ALJ failed to address the results of the Plaintiff's diagnostic discogram test which showed significant abnormalities, or Dr. Morganstein's opinion regarding the severity of Grosser's disability. The ALJ also failed to thoroughly analyze or address the testimony from the Plaintiff's cousin Carol Bayer, testimony that was consistent with the discogram results, and with Dr. Morganstein's opinion, all of which corroborated the Plaintiff's testimony concerning his level of pain.

The Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. First, symptoms, such as pain, shortness of breath, fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b). Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. § 404.1529(b). In so doing, the medical evidence of record is considered along with the claimant's statements. 20 C.F.R. § 404.1529(b). Social Security Ruling 96-7p gives the following instructions in evaluating the credibility of the claimant's statements regarding her symptoms: "In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p.

SSR 96-4p provides that "Once the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the pain or other symptoms alleged has been established on the basis of medical signs and laboratory findings, allegations about the intensity and persistence of the symptoms must be considered with the objective medical abnormalities, and all other evidence in the case record, in evaluating the functionally limiting effects of the impairment(s)." SSR 96-4p.

In this case, we find that the ALJ's analysis of these medical and factual issues did not meet the level of detail, clarity and specificity mandated by social security regulations and by law. Because the ALJ's determination that the Plaintiff's back impairment was not severe and the ALJ's assessment of the Plaintiff's credibility are not adequately explained or supported in the record before us, the case must be remanded in order for the ALJ to re-assess the severity of the Plaintiff's impairment and the credibility of Grosser's complaints of severe pain. See 42 U.S.C. § 405(g). The ALJ is further directed to fully discuss the relevant evidence which supports and contradicts her ultimate conclusion on these issues.

### III. Recommendation

For the following reasons, **IT IS RECOMMENDED THAT** the Plaintiff's appeal from the decision of the Commissioner of Social Security denying her claim for SSI benefits, (Doc. 1), be **REMANDED**.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of

court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 19th day of January, 2011.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge